IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SCOTT ELSEROAD, *individually and on behalf of all others similarly situated*, et al. | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-CV-1449-RP |
| BOSTON FOUNDRY, INC., *doing business as* Made in Cookware, | § § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Defendant Boston Foundry, Inc., doing business as Made in Cookware ("MIC") Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim. (Dkt. 19). Plaintiffs Scott Elseroad, et al. ("Plaintiffs") filed a response, (Dkt. 25), and MIC filed a reply, (Dkt. 27). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted in part and denied in part.

### I. BACKGROUND

#### a. Terminology

This case involves three types of chemicals and chemical groups, all beginning with the letter "P." The Court will begin by describing these three chemicals before turning to the substance of MIC's motion.

#### 1. PFAS

First is a chemical group known as perfluoroalkyl and polyfluoroalkyl substances ("PFAS"). PFAS is a class of over 4,700 man-made chemical compounds. (Compl., Dkt. 1, at 25). PFAS are known as "forever chemicals" because "they don't break down easily and can stay in the

1

environment and in the human body for a long time," according to Plaintiffs. (*Id.* at 3 (quotations omitted)).

### 2. PFOA

The second chemical at issue is perfluorooctanoic acid ("PFOA"). (*Id.* at 2). PFOA is a type of PFAS chemical. PFOA can be used as a non-stick and stain resistant coating and was commonly used in non-stick cookware in prior decades. (*Id.* at 4). The first generation of Teflon, for example, used a layer of PFOA coating. (Reply, Dkt. 27, at 5). However, in the early 2000s, concerns arose about the impact of PFOA on human health and the environment, and regulatory agencies began banning the substance in cookware. (Compl., Dkt. 1, at 4). Based on research showing PFOA was a human carcinogen, the chemical was phased out of production in 2002. (*Id.*).

### 3. PTFE

The third and final chemical at issue is polytetrafluoroethylene ("PTFE"). Like PFOA, PTFE is a type of PFAS chemical. (*Id.*). Like PFOA, PTFE has non-stick, hydrophobic properties that make it effective for non-stick cookware. (*Id.*). The two chemicals, however, are distinct. While PFOA consists of only seven to fourteen chained carbon atoms, PTFE contains several thousand carbon atoms chained together in a polymer. (*Id.*). While PFOA has been banned from production, PTFE is approved by the FDA for use in cookware. 21 C.F.R. § 175.300–(b)(3)(xxv) ("[P]olymeric coatings may be safely used as the food-contact surface of articles intended for use in producing . . . food . . . that may include [PTFE].").

### b. Case Background

MIC is an Austin-based company that manufactures and sells stainless, non-stick, carbon steel, cast iron, and copper cookware. (*Id.* at 14). Prior to August 2023, MIC advertised its non-stick cookware as "safe" and "100% non-toxic and made without PFOAs." (*Id.* at 31).



(*Id.*).

In October 2021, California passed the Safer Food Packaging and Cookware Act, which requires manufacturers to disclose if certain designated chemicals are used in their cookware, including PTFE. 2021 Cal. Legis. Serv. Ch. 503 (A.B. 1200) (West). The law also prevents manufacturers from claiming that their cookware is free from one chemical if the cookware uses a different chemical belonging to the same chemical group. *Id.* Namely, this prevents a company from claiming its cookware is free from PFOA if it uses PTFE because both chemicals belong to the PFAS group of chemicals. The disclosure provisions took effect in January 2024. *Id.* Shortly before then, in August 2023, MIC updated the description of its non-stick cookware. (*Id.* at 6). It added a page disclosing that it uses PTFE in its non-stick products and removed references to MIC being "non-toxic" and "made without PFOAs." (*Id.*).

Plaintiffs are consumers from different U.S. states who have purchased non-stick MIC cookware. (*Id.* at 7–13). Each Plaintiff claims that MIC "represented to Plaintiff that the Non-Stick [cookware was] made without PFOAs" (*Id.* at 8). Each Plaintiff claims that MIC described its non-stick cookware as "100% non-toxic" and "made without PFOAs." (*Id.*). They claim that these

3

statements were false because MIC's non-stick cookware contains PTFE. (*Id.*). Had each Plaintiff known about MIC's alleged misrepresentations, they claim they "would not have purchased the product or would have paid significantly less for it." (*Id.*).

Plaintiffs filed suit on November 28, 2023, as a putative class action of all American consumers who have purchased MIC non-stick cookware. (*Id.* at 1, 38). They allege MIC breached its express warranty and is liable for unjust enrichment and negligent misrepresentation. (*Id.* at 41–46). Plaintiffs also seek to certify sub-classes, so that each named Plaintiff may bring claims under the respective consumer protection laws of their state.[1] Beyond damages for this allegedly deceptive advertising, Plaintiffs seek an injunction prohibiting MIC from marketing and advertising the non-stick products until they can ensure compliance with state consumer protection laws. (*Id.* at 55).

MIC moved to dismiss on January 25, 2024. (Mot. Dismiss, Dkt. 19). MIC makes two overarching claims: (1) Plaintiffs lack standing to bring suit because they have not suffered a genuine injury from MIC's products or product descriptions; and (2) Plaintiffs fail to plausibly allege that MIC's advertisements were false or misleading because the statement that a product is PFOA-free does not mislead a consumer into believing that the product is also PTFE-free. (*Id.*).

## II. LEGAL STANDARD

### a. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited

---

[1] California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.; California False Advertising Law, *id.* §§ 1780, et seq., California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505/1, et seq.; Illinois Uniform Deceptive Trade Practices Act , 815 Ill. Comp. Stat. §§ 510, et seq., North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. §§ 75-1.1, et seq.; Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, et seq.; New York General Business Law, N.Y. Gen. Bus. Law §§ 349, et seq.; Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.020, et seq.; Kentucky Consumer Protection Act, Ky. Rev. Stat. Stat. Ann. §§ 367.110, et seq. (West 2023); Maryland Consumer Protection Act, Md. Code Ann., Comm. Law §§ 13-101, et seq.

jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### b. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

### III. DISCUSSION

#### a. Standing

MIC alleges that Plaintiffs fail to allege a cognizable economic harm. (Mot. Dismiss, Dkt. 19, at 14). Namely, MIC suggests that Plaintiffs have suffered no injury because they cannot show that MIC's cookware is toxic, especially since the FDA has authorized PTFE as safe for cookware. (*Id.* at 14–19). This argument speaks more to the merits than standing. Plaintiffs bring claims for deceptive advertising, not for personal injury. (*See* Compl., Dkt. 1). Plaintiffs paid a premium for cookware that they believed to be free of PFAS but contained PTFE. (*See id.* at 2–11). Assuming for the moment that this was a reasonable belief, then Plaintiffs were injured by paying more for a product than they would otherwise have. Although there is significant overlap between the two considerations, whether the advertising was misleading is better addressed through a motion to dismiss for failure to state a claim rather than for lack of subject-matter jurisdiction. *See Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction, therefore, is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.").

Before reaching the merits, however, the Court notes that Plaintiffs do lack standing to pursue injunctive relief. A plaintiff seeking injunctive relief must face a future injury that is "certainly

6

impending." *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990). "The threat of injury must be real and immediate not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up). Here, Plaintiffs allege that "unless and until enjoined and restrained by order of this Court, [MIC] will continue to cause injury in fact to the general public . . . ." (Compl., Dkt. 1, at 50, 55, 74). Accordingly, they seek an injunction preventing MIC "from engaging in [misleading] advertising and marketing practices in the future." (*Id.*).

Plaintiffs do not connect this request for injunctive relief to any real or immediate threat of injury. Most problematically, Plaintiffs are now aware of the alleged deceptive practices and now know that the cookware contains PTFE. There is no substantial risk that Plaintiffs will be misled about this in the future. *See Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) ("Because a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, there is no danger that they will again be deceived by them.") (quotations and citation omitted).

In their defense, Plaintiffs cite a recent Ninth Circuit decision holding that knowledge of misleading conduct is not an absolute bar to injunctive relief. (Pls.' Resp., Dkt. 25, at 19 (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018))). In *Davidson*, the Ninth Circuit reasoned, "Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." 889 F.3d at 969. That analysis is inapplicable here because MIC has already changed its advertising, so there is no substantial risk it will "remain false in the future." *Id.*; (Compl., Dkt. 1, at 30–32). MIC's advertising no longer states that it is "100% non-toxic" or free from PFOA. (*See* Compl., Dkt. 1, at 30–32; Mot. Dismiss, Dkt. 19, at 13).

Accepting that *ongoing* false advertising may sometimes justify prospective relief, the same cannot be said for a defendant who has ceased its false advertising. Plaintiffs cite no cases where a court has enjoined a defendant from deceptive advertising after the defendant has already fixed its

7

allegedly false advertising. (*See* Resp., Dkt. 25). That is unsurprising, as Plaintiffs' future injury now rests upon two layers of hypotheticals. First, MIC must revert to its past advertisements and second, Plaintiffs must be misled (again) by that advertisement. But Plaintiffs fail to allege any facts that remotely suggest MIC will revert to its previous advertising. Far from being "certainly impeding," those hypotheticals are entirely speculative. *Whitmore*, 495 U.S. at 158. Indeed, MIC is particularly unlikely to revert to its prior advertising because California law now requires the disclosure of PFAS chemicals in cookware. (*See* Compl., Dkt. 1, at 6, 30–32; Cal. Health & Safety Code §§ 109010, et seq. (West 2023)). Plaintiffs cannot and do not show that MIC is imminently planning on violating California law. Because Plaintiffs have failed to show that future false advertising is likely or impending, they cannot seek injunctive relief.

### b. Deceptive Advertising

Turning to the merits, Plaintiffs fail to plausibly allege that MIC engaged in deceptive advertising. Although Plaintiffs bring their claims under consumer protection laws of eight different states, each statute contains a common element: MIC must have made a misleading statement or made a statement that would deceive a reasonable consumer.[2] "Although the question of whether a

---

[2] *See McGinity v. Proctor & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (Counts IV-VI - California UCL, FAL, and CLRA claims "are governed by the 'reasonable consumer' standard," which requires that Plaintiffs plausibly "show that members of the public are likely to be deceived"); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (Count VII – ICFA claim requires Plaintiffs to plead and prove: "(1) a deceptive act or practice by [MIC]; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that [MIC] intended [Plaintiffs] and the members of the class to rely on the deception; and (4) that actual damages were proximately caused by the deception"); *Galanis v. Starbucks Corp.*, No. 16 C 4705, 2016 WL 6037962, at *4 (N.D. Ill. Oct. 14, 2016) (Count VIII - Illinois UDTPA claim also "require[s] a misleading statement of some kind"); *Solum v. CertainTeed Corp.*, 147 F. Supp. 3d 404, 411 (E.D.N.C. 2015) (Count IX - North Carolina UDTPA claim requires "plaintiffs must plausibly allege that (1) [MIC] committed an unfair or deceptive act or practice, (2) the act or practice was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff[s]"); *Rhino Linings U.S. v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146-47 (Colo. 2003) (Count X - Private cause of action under the CCPA requires that Plaintiffs allege: (1) that [MIC] engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of [MIC's] business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of [MIC's] goods, services, or property; (4) that the [P]laintiff[s] suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the [P]laintiff[s'] injury."); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (Count XI - NY GBL Section 349 requires Plaintiffs to plausibly "allege that [MIC]

business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." *Wynn v. Topco Associates, LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (internal quotations omitted).

1. MIC's "made without PFOAs" statement is not misleading

Plaintiffs' main allegation is that MIC misled them by stating their non-stick cookware, which uses PTFE, was "made without PFOAs." (*See* Compl., Dkt. 1). MIC moves to dismiss these allegations, arguing that its cookware *is* made without PFOAs and that Plaintiffs have failed to show otherwise. (Mot. Dismiss, Dkt. 19).

MIC argues that there is nothing misleading about its "made without PFOAs" statement. (*Id.*). MIC's cookware is lined with PTFE, not PFOA. (*See id.*). Indeed, Plaintiffs do not plausibly allege that MIC intentionally lines its cookware with PFOA. Instead, Plaintiffs primarily contend that MIC misled consumers because the statement "made without PFOAs" will lead consumers to also believe the product is made without PTFE. (*See* Compl, Dkt. 1, at 25–33).

Even drawing all reasonable inferences in Plaintiffs' favor, this argument is untenable. A plaintiff "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (internal quotation marks omitted). Instead, a plaintiff must "plausibly allege that a

---

has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [P]laintiffs suffered injury as a result of the allegedly deceptive act or practice"); *Scott v. Am. Express Nat'l Bank*, 22 Wash. App. 2d 258, 271 (Wash. Ct. App. 2022) (Count XII – Washington CPA claim requires Plaintiffs to allege: "(1) an unfair or deceptive act or practice (2) occurring in the trade of commerce (3) that impacts the public interest and (4) that causes injury to [Plaintiffs'] business or property; and (5) that injury is causally linked to the unfair or deceptive act."); *Petrey v. Ethicon, Inc.*, No. 5: 19-298-DCR, 2019 WL 5295185, at *2 (E.D. Ky. Oct. 18, 2019) (Count XIII – KCPA makes unlawful "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" and "provides a private right of action to any person who . . . suffers the loss of money or property due to the defendant's unlawful acts"); *Daniyan v. Viridian Energy LLC*, No. GLR-14-2715, 2015 WL 4031752, at *1 (D. Md. June 30, 2015) (Count XIV – MCPA requires Plaintiffs to allege "(1) an unfair or deceptive practice or misrepresentation that (2) is relied upon, and (3) causes [them] actual injury."); (Mot. Dismiss, Dkt. 19, at 14 n.5 (citing same)).

significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* Here, Plaintiffs' claim depends upon a reasonable consumer not only misunderstanding MIC's claim, but entirely misreading it. MIC disclaimed the use of PFOA; it did not disclaim the use of PTFE. Both PTFE and PFOA are part of the much larger group of chemicals known as PFAS, but as a simple matter of fact, MIC did not disclaim the use of PFAS chemicals in its advertising. It cannot be liable for misrepresentation because Plaintiffs misread "PTFE" for "PFAS."

Plaintiffs raise other arguments to suggest MIC misled them, but they are likewise unavailing. Plaintiffs first suggest that "literally true statements may still form the basis for deceptive conduct." (Resp., Dkt. 25, at 15 (citing *Dorris v. Danone Waters of Am.*, 2024 WL 112843, at *1-2 (S.D.N.Y. Jan. 10, 2024))). In *Dorris*, a plaintiff alleged that a company's statement was misleading when it claimed that its water bottle products were "carbon neutral." 2024 WL 112843, at *1-2. Because "carbon neutral" had varying technical terms, the court held that a consumer could be misled into thinking the water bottle's production emitted zero carbon, when in fact the carbon emissions were merely offset by other measures. *Id.* at *2–8. That is inapplicable here: the statement "free from PFOAs" has only one reasonable meaning: that the product is free from PFOAs.[3] There are no technical, competing interpretations of that term.[4]

---

[3] Citing FTC guidance on "greenwashing," Plaintiffs suggest in their response that a "truthful claim that a product . . . is free of . . . a substance may nevertheless be deceptive if . . . the product . . . contains or uses substances that pose the same or similar environmental risks as the substance that is not present." (Resp., Dkt. 25, at 3–4). Again, that is not the case here. PFOA is a particularly harmful substance that has been phased out of production in the United States. PTFE, by contrast, is an FDA-approved chemical that, when viewed most favorably to Plaintiffs, is subject to new scientific debate regarding its health effects. The two chemicals do not "pose the same" risks because one is certain to be dangerous while the other has been deemed safe.

[4] Plaintiffs also rely on *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 544 (N.D. Tex. 2014). That case dealt with an online hotel booking companies that claimed to guarantee the "best price" or "lower price" of hotels to consumers. However, the companies allegedly knew that hotels would offer the same price all around because the companies colluded to set prices. *Id.* Under these allegations, the court found it plausible that the "best price guarantee" was deceptive—even if literally true—because a reasonable consumer would assume that the best price referred to a price offered in the competitive market.

Plaintiffs next suggest that MIC products might contain PFOA because an article in Consumer Reports showed that other cookware products with PTFE often have cross-contamination with PFOA. (Compl., Dkt. 1, at 11 (citing Kevin Loria, *You Can't Always Trust Claims on 'Non-Toxic' Cookware*, Consumer Reports, (Oct. 26, 2022), https://www.consumerreports.org/toxic-chemicals-substances/you-cantalways-trust-claims-on-non-toxic-cookware-a4849321487)). As reported in the article, a cookware brand called "Swiss Diamond" advertised its non-stick cookware line as PFOA free. (*Id.*). Like MIC, Swiss Diamond's cookware used a PTFE coating. (*Id.*). The authors of the article conducted a chemical test on the cookware and found that Swiss Diamond "had measurable amounts of PFOA and several other PFAS." (*Id.*). Based on that article, Plaintiffs suggest that cookware lined with PTFE is likely to contain PFOA.

This inference is too attenuated to plausibly allege deceptive advertising. The finding that one PTFE product has PFOA does not plausibly lead to the inference that *all* PTFE products have PFOA. This guilt-by-association theory is too attenuated to impute liability onto MIC, and courts have rejected claims in highly similar contexts. In *Hicks v. L'Oreal U.S.A., Inc.*, a group of plaintiffs sued a cosmetics company, alleging that its products likely contained PFAS because a recent study showed that other cosmetics companies had PFAS in their products. No. 22 CIV. 1989 (JPC), 2023 WL 6386847, at *7 (S.D.N.Y. Sept. 30, 2023). The court dismissed the claims, noting that referencing the study of other cosmetic products did not suffice "to allow the inference that the [products] they individually purchased in fact contained PFAS." Similarly, in *Onaka v. Shiseido Americas Corp.*, the plaintiffs alleged that products marketed as "clean" and "natural" were misleading

---

*Id.* at 545–46. That is a markedly more serious misrepresentation than at issue here. When a company offers the "best price," consumers will have an unstated, reasonable assumption that the price is set in a competitive market. But there is no corresponding assumption here. Plaintiffs do not plausibly show that when a company disclaims PFOA in its products, it is an unstated, reasonable assumption that they are also disclaiming all PFAS.

11

because they allegedly contained PFAS chemicals. 2024 WL 1177976, at *1 (S.D.N.Y. Mar. 19, 2024). The plaintiffs argued that "they were injured because they overpaid for Defendant's makeup, which was advertised as 'clean' but which actually contained undisclosed, potentially toxic, PFAS." *Id.* at *2. In support of their claims, the plaintiffs cited a third-party study regarding the use of toxic PFAS chemicals in some raw cosmetic ingredients. *Id.* at *3. Finding that the plaintiff had failed to plausibly allege a cognizable injury, the court explained that "[i]t is entirely speculative to infer that because some unidentified suppliers might treat certain raw ingredients with PFAS, all cosmetics with those ingredients contain PFAS." *Id.* at *4.

Plaintiffs' claims here are similarly deficient. In order to show MIC's "free from PFOAs" statement is misleading, Plaintiffs must plausibly allege that MIC's cookware has PFOAs. *See Dalewitz v. Procter & Gamble Co.*, No. 7:22-CV-07323 (NSR), 2023 WL 6215329, at *3 (S.D.N.Y. Sept. 22, 2023) ("If Plaintiff fails to plausibly allege Oral-B Glide in fact contains PFAS or causes harm to consumers, Plaintiff cannot plausibly allege Defendant's advertising materials are false or misleading."). Plaintiffs fall short of that standard because they do not directly, plausibly allege the presence of PFOA in MIC cookware. They have plausibly alleged that Swiss Diamond cookware has PFOA, but not that MIC's cookware does. Without those allegations, Plaintiffs cannot demonstrate that MIC deceived them by labeling its cookware "free from PFOAs." *See Santiful v. Wegmans Food Markets, Inc.*, No. 20-CV-2933 (NSR), 2023 WL 2457801, at *4 (S.D.N.Y. Mar. 10, 2023) (finding cake mix's "no artificial flavors" labeling was not deceptive where plaintiffs failed to plausibly allege presence of artificial flavors).

2. MIC's claim to be "safe" and "100% non-toxic" is plausibly misleading

The closer question is whether MIC plausibly deceived Plaintiffs by claiming that their products were "safe" and "100% non-toxic." (Compl., Dkt. 1, at 33). The issue is under-briefed because Plaintiffs focus their claims on whether MIC cookware disclaimed PFAS chemicals and not

the question of whether PTFE independently is "safe" and "non-toxic." (*See* Resp., Dkt. 25, at 17 ("The gravamen of Plaintiffs' claims is that many consumers—including Plaintiffs—simply do not want to use cookware with PFAS 'forever chemicals,' which are the subject of ongoing scientific and regulatory debate. [Plaintiffs] paid a price premium to receive cookware 'free from' those chemicals, but what they received was cookware containing PFAS 'forever chemicals.'"); *id.* at 7 ("The level of harm posed by the PFAS 'forever chemicals' in MIC's cookware is beside the point.")). As set out above, MIC never claimed its products were PFAS-free and it did not engage in misleading advertising by claiming its products were PFOA-free. To the extent that Plaintiffs claim PTFE is toxic because it contains PFOA, that claim is not plausibly alleged.

Nonetheless, Plaintiffs do allege sufficient facts to nudge them over the plausibility line as to the general safety and toxicity of PTFE. Plaintiffs cite a New York Times article on PFAS, stating, "Scientists think these widely used industrial chemicals may harm pregnant women and their developing babies by meddling with gene regulators . . . ." (Compl., Dkt. 1, at 26 (citing Liza Gross, *These Everyday Toxins May be Hurting Pregnant Women and Their Babies*, The New York Times, https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxinschemicals.html, (Mar. 21, 2023))). They also cite a CDC article noting that "exposure to high levels of PFAS may impact the immune system and reduce antibody responses to vaccines." (*Id.* (citing *What are the health effects of PFAS?*, Agency for Toxic Substances and Disease Registry, https://www.atsdr.cdc.gov/pfas/health-effects/index.html, (Mar. 21, 2023))). An EPA fact sheet cited by Plaintiffs notes that "exposure to some PFAS in the environment may be linked to harmful health effects in humans and animals." (*Id.* at 27 (citing *PFAS Explained*, Environmental Protection Agency, https://www.epa.gov/pfas/pfas-explained, (Mar. 21, 2023))). In addition to these articles, Plaintiffs allege, "Heating PTFE to high temperatures, such as temperatures needed to cook steak, may change the composition of the chemical and may increase its hazard." (*Id.* at 36). They note, "Scratched or peeling non-stick

13

coatings can cause flakes of the coating in food that humans later consume and can increase the production of harmful fumes." (*Id.* at 37).

As a factual matter, it is far from clear that these allegations genuinely support Plaintiffs' misrepresentation claims. None of the articles cited by Plaintiffs mentioned PTFE, only PFAS. (*See id.* at 24–27). And while PTFE may be unsafe at extreme temperatures, it is not clear if consumers regularly cook at these temperatures or if MIC warns purchasers not to use non-stick cookware at high temperatures. At the pleading stage, however, the Court must view these factual allegations in the light most favorable to Plaintiffs. *In re Katrina Canal Breaches*, 495 F.3d at 205; *see also Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("California courts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."). Accepting Plaintiffs' allegations as true, it is plausible that PTFE is unsafe and toxic when scratched or heated to high temperatures. For that reason, the complaint survives on the narrow claim that MIC misled consumers by advertising its cookware as safe and non-toxic.

### c. Remaining Claims

#### 1. Plaintiff Mills Cannot Bring a Kentucky Consumer Protection Act Claim

MIC also moves to dismiss Plaintiff Brent Mills's claim under the Kentucky Consumer Protection Act because he purchased MIC cookware from a thrift store, rather than directly from MIC. To maintain an action under the Kentucky Consumer Protection Act (Ky. Rev. Stat. Ann. §§ 367.010 et seq.) (West 2023) ("KCPA"), "an individual must fit within the protected class of persons defined" in Section 367.220. *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992). "The Kentucky Supreme Court has construed this provision to mean that an individual must be a purchaser with privity of contract in order to have standing to bring an action under the Act." *Williams v. Chase Bank USA, N.A.*, 390 S.W.3d 824, 829 (Ky. Ct. App. 2012). Most Kentucky courts have therefore held that "a subsequent purchaser may not maintain an action against a seller

with whom he did not deal or who made no warranty for the benefit of the subsequent purchaser." *Skilcraft*, 836 S.W.2d at 909.

Some Kentucky courts have applied a narrow exception to the privity requirement, such as "where the defendant . . . provides warranties to the ultimate purchaser to repair the item purchased." *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 743 (W.D. Ky. 2013) (citing *Ford Motor Co. v. Mayes*, Ky. App., 575 S.W.2d 480 (1978)). That exception is now recognized as the minority view. The majority of Kentucky courts still require a showing of privity. *See Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 962 (E.D. Ky. 2019) (collecting cases). Moreover, even if *Naiser*'s exception accurately reflected Kentucky law, it would still be inapplicable to Mills's claims. MIC did not and could not guarantee a warranty that used MIC cookware would be safe, non-toxic, and PFOA-free because those factors depend on the cookware's treatment by the intermediate purchaser. That intermediate purchase breaks the parties' privity because MIC can no longer make representations about the cookware's state. *See Yonts v. Easton Tech. Prod., Inc.*, 676 F. App'x 413, 419 (6th Cir. 2017) ("Because [plaintiff] purchased the [product] second-hand, at least one other consumer separates him from any retailer or distributor, let alone the actual manufacturer. . . . Thus, the rationale of . . . *Naiser* does not apply to [plaintiff's] breach of warranty and KCPA claims . . . ."). Because Mills cannot show privity, his KCPA claim must be dismissed.

2. The Economic Loss Rule Does Not Necessarily Bar Plaintiffs' Claims

Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Owens v. BAC Home Loans Servicing, L.P.*, No. H-11-2742, 2013 WL 1345209, at *4 (S.D. Tex. Mar. 30, 2013) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). The economic loss doctrine bars negligent misrepresentation claims where the plaintiff is seeking to recover benefit-of-the-bargain damages. *See Shrieve Chem. Prods., Inc. v. Caremoli*, No. H-16-2173, 2018 WL 1558273, at *4 (S.D. Tex.

15

Jan. 4, 2018). The rule does not bar claims to recover the difference between the value received and given. *Id.*

It is not clear from Plaintiffs' complaint that they intend only to recover benefit-of-the-bargain damages. (*See* Compl., Dkt. 1). Based on their complaint, Plaintiffs may also seek to recover the difference between the value of what they received and the purchase price given for it. *See Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex. 1991). Such a claim sounds in tort and is not barred by the economic loss rule. *See id.*; Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Accordingly, it would be premature to dismiss Plaintiffs' claims under the economic loss rule.

### d. Scheduling Order

Although the Court allows Plaintiffs' claim to survive in part, it does so predominantly on the grounds that misrepresentation is a fact-intensive question and generally inappropriate for the motion to dismiss stage. *See Williams*, 552 F.3d at 939. The parties' proposed scheduling order, however, entails extensive discovery and briefing on class certification. (*See* Scheduling Order, Dkt. 31). It would be inefficient for both the parties and the Court to undergo extended discovery and class certification when the core merits question—whether MIC misrepresented the safety and toxicity of PTFE—only ekes into the realm of plausibility. The Court will therefore order the parties to submit a modified proposed scheduling order that prioritizes this merits question prior to class certification.

### IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that MIC's motion to dismiss, (Dkt. 19), is **GRANTED IN PART AND DENIED IN PART**. MIC's motion is granted as to Plaintiffs' request for injunctive relief, Plaintiff Mills's complaint under Kentucky law, and Plaintiffs' allegations that MIC misled consumers by advertising its products as free from PFOAs. The

complaint survives as to the claim that MIC misled consumers by labeling its cookware "safe" and "100% non-toxic."

On or before **July 24, 2024**, the parties shall file an updated proposed scheduling order that allows for dispositive motions briefing prior to class certification.

**SIGNED** on July 10, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE